IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


RICKY D. CRONE,
        Petitioner,

vs.                                                      Case No.: 5:05cv47/MCR/EMT

JAMES R. McDONOUGH,[1]
        Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1).  Respondent filed an answer and relevant portions of the state court record (Doc. 12).  Petitioner did not file a reply.

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.       BACKGROUND AND PROCEDURAL HISTORY

The procedural background of this case is undisputed by the parties.  On February 11, 1999, following a jury trial in the Circuit Court for Bay County, Florida, Petitioner was convicted of second-degree murder and sentenced to 342.4 months in prison (Doc. 12, Ex. A-II at 234–44[2]).

---

[1]James R. McDonough succeeded James Crosby as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

[2]Page numbers refer to the large bold numbers on the lower right hand side of the pages.

Petitioner appealed his conviction and sentence to the Florida First District Court of Appeal (the "First DCA"), which affirmed the judgment and sentence on March 7, 2000 (*id.*, Ex. A-II at 279). The mandate issued on March 23, 2000 (*id.*, Ex. A-II at 278).

On January 8, 2001, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, asserting eleven claims of ineffective assistance of counsel (*id.*, Ex. A-II at 293–94, 367).  The trial court set an evidentiary hearing on grounds five and ten and denied relief on Petitioner's remaining claims (*id.*, Ex. A-IV at 625).  Following the evidentiary hearing, the court denied relief on grounds five and ten on December 19, 2001 (*id.*, Ex. A-IV at 688–89).  On January 17, 2003, the First DCA affirmed the denial of relief for all claims except grounds eight and nine (the claims raised in Petitioner's instant federal habeas petition), which were remanded back to the trial court to either hold an evidentiary hearing or attach portions of the record conclusively refuting Petitioner's claims (*id.*, Ex. A-V at 775–76). Crone v. State, 835 So. 2d 342 (Fla. 1st DCA Jan. 17, 2003) (Table).  On July 25, 2003, the trial court held an evidentiary hearing on claims eight and nine (Doc. 12, Ex. A-VI at 894–914).  The trial court denied relief on grounds eight and nine on September 10, 2003 (*id.*, Ex. A-V at 848).  Petitioner moved for rehearing on September 24, 2003 (*id.*, Ex. A-V at 849–50), and the trial court denied Petitioner's motion on April 2, 2004 (*id.*, Ex. A-V at 855).  The First DCA affirmed the trial court's dismissal of Petitioner's claims (eight and nine) per curiam on January 21, 2005, with the mandate issuing on February 8, 2005 (*id.*, Ex. C). Crone v. State, 892 So. 2d 1017 (Fla. 1st DCA Jan. 21, 2005) (Table).

Petitioner filed the instant habeas action on February 25, 2005 (*see* Doc. 1 at 12). Respondent concedes that the petition is timely (Doc. 12 at 6–7) and that Petitioner exhausted his state court remedies (*id.* at 7).

II.    TRIAL EVIDENCE

Resolution of Petitioner's claims requires thorough consideration of the evidence adduced at trial.  Therefore, a summary of this evidence follows.

Bruce Davidson testified during Petitioner's trial that he was dating the victim, Nancy Tallagsen, at the time of her death and knew she was having trouble retrieving her purse from her ex-boyfriend, Petitioner (*id.*, Ex. B at 39, 41).  On the evening of Saturday June 27, 1998, Davidson picked up Tallagsen at Petitioner's apartment (*id.*, Ex. B at 41).  Tallagsen exited Petitioner's

apartment without her purse (*id.*, Ex. B at 42). Tallagsen stayed with Davidson that evening, and the next morning there was a message on Davidson's machine from Petitioner: "Nancy, I want you to come get all your stuff. Let's end this thing. Ricky." (*id.*, Ex. B at 43–45). Davidson brought Tallagsen, who was dressed in a beige sundress and sunglasses but was not wearing shoes, to Petitioner's apartment to get her purse (*id.*, Ex. B at 45–46). Davidson parked his beige pick-up truck outside the Castle Motel and waited outside while Tallagsen went to knock on Petitioner's door (*id.*, Ex. B at 47). About three to five minutes after Tallagsen entered Petitioner's apartment, the door opened and Tallagsen staggered out; she had her hand to her neck and blood was dripping off her body (*id.*, Ex. B at 48). Petitioner, following behind Tallagsen, had a knife in his right hand and yelled "she's dead, she's dead, I've killed her and now I'm going to kill you" (*id.*, Ex. B at 49). Davidson stated that Petitioner was also covered in blood and the tone of his voice was very hateful (*id.*, Ex. B at 49).

Davidson grabbed Tallagsen, put her in his truck, and drove to the EZ Serve next door (*id.*, Ex. B at 50–51). He observed that Tallagsen had a big gash in her face and a hole in her neck; blood was gushing from the hole (*id.*, Ex. B at 51). While Davidson was driving, Tallagsen collapsed (*id.*, Ex. B at 52). At the EZ Serve, Davidson attempted to stop Tallagsen's bleeding and called 911; Tallagsen was breathing shallowly and had lost a lot of blood (*id.*, Ex. B at 53–55).[3] When a deputy arrived, Davidson told him that the man who had stabbed Tallagsen was in his room at the Castle Motel (*id.*, Ex. B at 55–56).

Nancy Baker was working at the EZ Serve when Davidson drove Tallagsen there in a light colored pick-up truck (*id.*, Ex. B at 63). Baker observed Tallagsen's injuries and attempted to help her (*id.*, Ex. B at 65). Baker stated that earlier that day, Petitioner purchased a twelve-pack of beer from her (*id.*, Ex. B at 66). Robert Carter, a resident of the Castle Motel, testified that he saw Petitioner at the EZ Serve that morning, before the stabbing (*id.*, Ex. B at 94). He asked Petitioner how he was doing, and Petitioner responded that "it was a good day for a killing" (*id.*, Ex. B at 94).

---

[3]By the time Tallagsen arrived at the hospital, she had no vital signs, and doctors in the emergency room were unable to revive her (Doc. 12, Ex. B at 156). The doctors observed that Tallagsen had a large laceration to her right cheek and a laceration type stab wound to the right subclavian area above her collar bone on the right side of her neck (*id.*, Ex. B at 156). The stab wound on her neck cut vessels from the aorta and punctured the right lung, resulting in her death (*id.*, Ex. B at 204).

Carter stated that on numerous other occasions, Petitioner had stated that he wanted to kill Tallagsen (*id.*, Ex. B at 95, 97).

Steve Batchelor, a patrol officer, testified that when he arrived at the EZ Serve in response to Davidson's 911 call, he observed a parked small white pick-up truck with both the passenger and driver doors open (*id.*, Ex. B at 26–28).  He saw the victim lying on her back and saw Edwards and Davidson attempting to stabilize her and stop the bleeding from her neck (*id.*, Ex. B at 28–29).  After EMS personnel arrived on the scene, Davidson told Batchelor that Petitioner had stabbed the victim and that Petitioner was in room nine at the Castle motel (*id.*, Ex. B at 29–30).  Batchelor went to the Castle motel and spoke with Mr. White, who was standing at the door to his room (number three) (*id.*, Ex. B at 30).  White said that a disturbance had occurred in room nine and then White saw Petitioner run across the street covered in blood (*id.*, Ex. B at 30).[4]  As Batchelor entered room nine, he observed blood on the door, the door knob, the ground, and on the walls of the breeze way leading to Rose Lane; Petitioner was sitting inside the room and was covered in blood (*id.*, Ex. B at 31).[5]  Although Petitioner appeared to be upset and was rocking back and forth with his head in his hands, Petitioner did not appear to have any physical injuries or to be under the influence of drugs or alcohol (*id.*, Ex. B at 32–33, 36).  Batchelor also observed blood on the carpet inside the apartment and saw a knife sitting on a coffee table (*id.*, Ex. B at 33).  DNA testing revealed that the blood on the knife, from the inside of the pick-up truck, and from Petitioner's shirt was consistent with Tallagsen's blood (178–80).

John Corley, a crime scene investigator, examined the pick-up truck and Petitioner's room at the Castle Motel (*id.*, Ex. B at 128–29).  He took a video of the area, and described it to the jury as they watched it (*id.*, Ex. B at 130–33).  In addition, he described to the jury fifty-three photographs that he took of the pick-up truck, the Castle Motel area, the inside of Petitioner's room and bathroom, and the breezeway to Rose Lane (*id.*, Ex. B at 137–45).  The photographs showed

---

[4]Several other residents of the Castle Motel saw Petitioner run across the street and back, observed that Petitioner was covered with blood, and noticed the blood in the breezeway (Doc. 12, Ex. B at 69–70, 77, 87–88).

[5]Steve Harbuck, an investigator with the Bay County Sheriff's Office, testified that he saw Petitioner at the hospital later that day and Petitioner was covered in blood, though Petitioner did not have any injuries (Doc. 12, Ex. B at 104, 110–11).

the numerous bloodstains inside and outside of Petitioner's apartment, as well as the knife that was found in Petitioner's apartment (*id.*, Ex. B at 137–45).

Mickey White, a resident of the Castle Motel, testified that after he saw Petitioner return to his apartment, White entered Petitioner's apartment and Petitioner told White that he had stabbed Tallagsen (*id.*, Ex. B at 78–80).  Another neighbor, Pete Kilmer, also heard Petitioner say that he stabbed Tallagsen (*id.*, Ex. B at 88).  Petitioner's blood and urine tested negative for alcohol and drugs (*id.*, Ex. B at 190–91).

III.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States."  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19.

Section 2254 now provides:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
   (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
   (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[6]  The appropriate test in habeas cases was described by Justice O'Connor:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13; Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding.  *See* Wellington v. Moore, 314 F.3d 1256, 1260–61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343–45 (11th Cir. 2002).  First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication.  Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343.  Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law.  Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344.  "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the

---

[6]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99, 120 S. Ct. at 1499–1503, 1511–16); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13, 120 S. Ct. at 1518–23).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

relevant Supreme Court precedent."  Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), *cert. denied*, 535 U.S. 1104, 122 S. Ct. 2310, 152 L. Ed. 2d 1065 (2002) (quoting Williams, 529 U.S. at 405)).  "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law."  Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404–06).  If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority."  Fugate, 261 F.3d at 1216.  Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." *Id.* (citing and quoting Williams, 529 U.S. at 406).  A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 410.  The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'"  Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (quoting Williams, 529 U.S. at 411).  Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003).  A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by

a federal court produces a firm conviction that [the state court] judgment is infected by constitutional error."  Williams, 529 U.S. at 389.  "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations."  Yarborough v. Alvarado, 541 U.S. 652, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004) (citation omitted).  Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent.  Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n.4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence."  Section 2254(e)(1); *see* Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).") (dictum); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835–36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); *see also* Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations).  Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence.  *See* Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir. 2004) ("[Petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record.")).

Within this framework, this Court will review Petitioner's claims.


IV.    PETITIONER'S CLAIMS

A.      Ground one: Petitioner was denied effective assistance of counsel in violation
of the Sixth and Fourteenth Amendments to the Constitution

(Doc. 1 at 8).  Petitioner contends that during his trial on February 10 and 11, 1999, defense counsel

failed to object when the prosecutor showed an overabundance of pictorial evidence of the crime

scene and a video of the crime scene (*id.*).  Petitioner states that the state attorney presented fifty-

four photographs of the crime scene to the jury (*id.*).  These photographs were a duplication of the

video shown to the jury (*id.* at 9).  The additional evidence served no evidentiary purpose, because

Petitioner's state of mind at the time of the crime was the primary issue and there was no dispute as

to the perpetrator or the method or manner of the victim's death (*id.*).  Further, Petitioner alleges that

the pictures prejudiced the jurors against the defendant (*id.*).  Defense counsel's failure to object to

this evidence violated Petitioner's right to effective assistance of counsel (*id.*).

1.      Clearly Established Supreme Court Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in

Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To obtain relief

under Strickland, a petitioner must show (1) deficient performance by counsel and (2) a reasonable

probability that, but for counsel's deficient performance, the result of the proceeding would have

been different.  *Id.* at 687–88.  If a petitioner fails to make a showing as to either performance or

prejudice, he is not entitled to relief.  *Id.* at 697.  Thus, this court need not address the prejudice

prong if the court determines that the performance prong is not satisfied.  Turner v. Crosby, 339 F.3d

1247, 1279 (11th Cir. 2003), *cert. denied*, 541 U.S. 1034, 124 S. Ct. 2104, 158 L. Ed. 2d 718 (2004);

Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be

satisfied in order to show a violation of the Sixth Amendment, the court need not address the

performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation

omitted).

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's

performance was unreasonable is a heavy one."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir.

2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).

> Trying cases is no exact science.  And as a result, we must never delude
> ourselves that the fair review of a trial lawyer's judgment and performance is an
> activity that calls for great precision or for a categorical approach.  When reviewing

whether an attorney is ineffective, courts "should always presume strongly that counsel's performance was reasonable and adequate." Atkins v. Singletary, 965 F. 2d 952, 958 (11th Cir. 1992). And, "a court should be highly deferential to those choices . . . that are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F. 3d 1445, 1450 (11th Cir. 1993). Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it can be shown that no reasonable lawyer, in the circumstances would have done so.

Rogers v. Zant, 13 F. 3d 384, 386 (11th Cir. 1994); Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001) (to show counsel's performance was unreasonable, defendant must establish that no competent counsel would have taken the action that his counsel did take); Chandler, 218 F.3d at 1313 (issue is not what is possible, prudent, or appropriate, but what is constitutionally compelled) (citing Burger v. Kemp, 483 U.S. 776, 107 S. Ct. 3114, 3126, 97 L. Ed. 2d 638 (1987)).

However, not every strategic decision passes constitutional muster. Whether a particular decision by counsel was a tactical one is a question of fact, Hardwick v. Crosby, 320 F.3d 1127, 1163 (11th Cir. 2003), and the state court's resolution of that issue enjoys a strong presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); Jackson v. Herring, 42 F.3d 1350, 1367 (11th Cir. 1995); Horton v. Zant, 941 F.2d 1449, 1462 (11th Cir. 1991). Whether a particular tactical decision was a reasonable one, however, is a question of law, Hardwick 320 F.3d at 1163; Jackson, 42 F.3d at 1367; Horton, 941 F.2d at 1462. In determining whether counsel's decision was reasonable, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. Wellington, 314 F.3d at 1260. The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

> reasonable probability is a probability sufficient to undermine confidence in the
> outcome.

*Id.* at 694.  Indeed, it would be "contrary to" the law clearly established in <u>Strickland</u> for a state

court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the

evidence.  <u>Williams v. Taylor</u>, 529 U.S. at 405–406.

The prejudice assessment does "not depend on the idiosyncracies of the particular

decisionmaker," as the court should presume that the judge or jury acted according to law.

<u>Strickland</u>, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether

there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable

doubt respecting guilt."  *Id.* at 695.

> In making this determination, a court hearing an ineffectiveness claim must consider
> the totality of the evidence before the judge or jury.  Some of the factual findings will
> have been unaffected by the errors, and factual findings that were affected will have
> been affected in different ways.  Some errors will have had a pervasive effect on the
> inferences to be drawn from the evidence, altering the entire evidentiary picture, and
> some will have had an isolated, trivial effect.  Moreover, a verdict or conclusion only
> weakly supported by the record is more likely to have been affected by errors than
> one with overwhelming record support.  Taking the unaffected findings as a given,
> and taking due account of the effect of the errors on the remaining findings, a court
> making the prejudice inquiry must ask if the defendant has met the burden of
> showing that the decision reached would reasonably likely have been different absent
> the errors. . . . [T]he ultimate focus of inquiry must be on the fundamental fairness
> of the proceeding whose result is being challenged.

*Id.* at 695–96.

### 2.    Federal Review of State Court Decision

Petitioner contends that he was denied effective assistance of counsel because his trial

counsel failed to object when the prosecutor showed an overabundance of pictorial evidence of the

crime scene and a video of the crime scene (Doc. 1 at 8).  Petitioner raised this claim in his Rule

3.850 motion (Doc. 12, Ex. A-II at 293) and on remand from the First DCA, the trial court held an

evidentiary hearing on the claim (*id.*, Ex. A-VI at 894–914).

Petitioner's trial counsel, Walter Smith, testified at the evidentiary hearing that during the

trial the State introduced approximately fifty-three photographs and a video of the crime scene (Doc.

12, Ex. A-VI at 900–01).  The trial transcript shows that seven of the photographs depicted the white

pick-up truck at the EZ Serve, five depicted the Castle Motel area, twenty depicted the inside of Petitioner's room and the bathroom, and twenty-one depicted the breezeway to Rose Lane (*id.*, Ex. B at 137–45). Smith did not object to the photographs or the video, because the evidence did not seem excessively gruesome or cumulative (*id.*, Ex. A-VI at 903). Specifically, the video shows the geographical area and the location of the motel building to its surroundings, while the photographs show markers that represent where a particular item of physical evidence was located (*id.*, Ex. A-VI at 903, 906). Smith stated that, although the amount of blood reflected in the photographs could have an emotional impact on the jury, he questioned each juror during voir dire to see if the juror was particularly sensitive to blood (*id.*, Ex. A-VI at 902).

In a written order, the trial court denied Petitioner's claim for failing to satisfy either prong of Strickland (*id.*, Ex. A-V at 848). The state court's decision contains no factual findings or analysis (*see id.*, Ex. A-V at 848). However, because the state court explicitly identified and applied the Strickland standard, and the state court did not reach a decision different from the Supreme Court in a case with indistinguishable facts, Petitioner cannot show the state court decision was "contrary to" Strickland. Therefore, he is entitled to federal habeas relief only if he establishes the state court's denial of his claim was objectively unreasonable.

In order to satisfy the first prong of the Strickland analysis, Petitioner must show that no competent counsel would have taken the action that his counsel did take. Failure to raise meritless arguments does not render counsel's assistance ineffective. Lockhart v. Fretwell, 506 U.S. 364, 382, 113 S. Ct. 838, 894, 122 L. Ed. 2d 180 (1993); United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000). Thus, the court must determine whether defense counsel had a meritorious basis for objecting to the photographs and video.

Florida law provides that all relevant evidence is admissible unless its "probative value is substantially outweighed by . . . needless presentation of cumulative evidence." Fla. Stat. §§ 90.402, 90.403. "Crime scene photographs are considered relevant when they establish the manner in which the murder was committed, show the position and location of the victim when he or she is found by police, or assist crime scene technicians in explaining the condition of the crime scene when police arrived." Douglas v. State, 878 So. 2d 1246 (Fla. 2004). Further, "[t]he admissibility of evidence lies in the sound discretion of the trial court," and trial court decisions are reviewed for abuse of

discretion.  Randolph v. State, 853 So. 2d 1051, 1062 (Fla. 2003); Vasser v. State, 807 So. 2d 760 (Fla. 5th DCA 2002) (finding that the trial court did not abuse its discretion when it admitted numerous autopsy photos that had probative value in aiding the jury in determining whether the victim's beating death was a result of ill will, hate, spite, or evil intent).

In the instant case, even if Smith had objected to the photographs and the video, the trial court likely would have ruled that they were admissible.   The video and photographs were used at trial to assist John Corley, a crime scene investigator, to show the location and position of physical evidence and to explain the condition of the crime scene (Doc. 12, Ex. B at 127, 130–33, 137–45). Further, the photographs were not needlessly cumulative.  For example, only twenty were taken of the inside of Petitioner's room, and they were used to show the layout of the room; the location of the victim's purse and sunglasses; the location of the knife; and bloodstains on the knife, carpet, and in the bathroom (id., Ex. B at 139–42).  The twenty-one photographs of the breezeway depict the bloodstains on the wall and ground in the breezeway and footprints found in the area (id., Ex. B at 142–45).  While the video covered the same area, it focused more on the physical relationship of the buildings and cars (id., Ex. B at 130–33).  Since Petitioner has not demonstrated that the judge would have ruled favorably if Smith had objected to the photographs and video, it cannot be said that counsel's performance was deficient in not objecting.

Even assuming that Smith should have objected to the photographs and video, Petitioner cannot show prejudice.  If counsel had objected and the trial court had sustained his objection and excluded some of the photographs or the video as needlessly cumulative, there is no reasonable possibility that the results of the proceeding would have been different.  At trial, the jury heard overwhelming evidence of Petitioner's guilt of second-degree murder, including testimony that Petitioner had stated in the past that he wanted to kill Tallagsen, testimony that Petitioner said "it was a good day for a killing" on the morning of Tallagsen's death, and testimony from three witnesses who heard Petitioner admit to stabbing Tallagsen.  In particular, Petitioner told Davidson that "I've killed her and now I'm going to kill you."  Further, the jury heard evidence that Petitioner killed Tallagsen by stabbing her, Petitioner was covered in her blood, and the knife he used to kill her was found in his apartment.   Therefore, Petitioner has not demonstrated any reasonable

possibility that the results of his trial would have been different if his counsel had objected to the photographs and video of the crime scene as cumulative.

Thus, Petitioner's ineffective assistance of counsel claim is without merit, and the state court did not contrarily or unreasonably apply clearly established Supreme Court law when it denied Petitioner's claim.

B.       Ground two: Petitioner was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the Constitution

(Doc. 1 at 8).  Petitioner asserts that defense counsel failed to object when the prosecutor read the definitions of ill will, hatred, spite, and evil intent during closing arguments on February 11, 1999 (*id.*).  Petitioner argues that these definitions were confusing, and if defense counsel had objected, the trial court would have given a curative instruction requiring the jurors to disregard the definitions and rely only on the court's instructions (*id.* at 10).  Petitioner claims that defense counsel's failure to object denied Petitioner his right to effective assistance of counsel (*id.*).

1.       Clearly Established Supreme Court Law

The Strickland standard for ineffective assistance of counsel is set forth *supra*.

2.       Federal Review of State Court Decision

Petitioner raised this claim in his Rule 3.850 motion (Doc. 12, Ex. A-II at 294) and on remand from the First DCA, the trial court held an evidentiary hearing on the claim (*id.*, Ex. A-VI at 894–914).

At the evidentiary hearing, Smith testified regarding the reason that he did not object to the prosecutor's closing argument.  Smith stated that Petitioner was accused of and ultimately convicted of second-degree murder, which required the jury to determine whether Petitioner acted with a depraved mind (*id.*, Ex. A-VI at 903–04; *see also id.*, Ex. B at 253).  The jury instructions define an "act . . . demonstrating a depraved mind" as "an act . . . done from ill will, hatred, spite or an evil intent," but the instructions do not define "ill will," "hatred," "spite," or "evil intent" (*id.*, Ex. A-VI at 910; *see also id.*, Ex. B at 253).  In the prosecutor's closing argument, she read the dictionary definitions of these words to the jury:

> The act is done from ill will, hatred, spite, or an evil intent.  Now, the judge will instruct you to use your common sense when you are deciding your verdict.  So you need to use your common sense when you're deciding what ill will, evil intent, spite

>and hatred means. I will submit to you from Webster's dictionary for an example in
>your own experience and common sense what these words mean, ill will, hostility,
>hate, dislike. Hatred, strong dislike or ill will. Spite, a mean or evil feeling towards
>another characterized by inclination to hurt, humiliation, a grudge. Evil, morally bad
>or wrong. Harmful, injurious

(*id.*, Ex. B at 236–37). Smith testified at the evidentiary hearing that he made a tactical decision not

to object, because the dictionary definitions read by the prosecutor helped Smith's closing argument

(*id.*, Ex. A-VI at 910). Specifically, Smith argued to the jury that the definition of depraved mind

does not include "anger" or "rage" (*id.*, Ex. A-VI at 910; *see also id.*, Ex. B at 226, 232, 249).

In a written order, the trial court denied Petitioner's claim for failing to satisfy either prong

of Strickland (*id.*, Ex. A-V at 848). The state court's decision contains no factual findings or

analysis (*see id.*, Ex. A-V at 848). However, because the state court explicitly identified and applied

the Strickland standard, and the state court did not reach a decision different from the Supreme Court

in a case with indistinguishable facts, Petitioner cannot show the state court decision was "contrary

to" Strickland. Therefore, he is entitled to federal habeas relief only if he establishes the state

court's denial of his claim was objectively unreasonable.

Regarding the first prong of the Strickland analysis, Petitioner must show that no competent

counsel would have taken the action that his counsel did take. Smith testified that he had been

trying murder cases for twenty-one years (*id.*, Ex. A-VI at 912) and that he made a tactical decision

not to object to the prosecutor's closing argument because it helped his own closing argument. The

trial transcript supports Smith's evidentiary hearing testimony: the definitions read by the prosecutor

were consistent with and added support to Smith's closing argument that those definitions do not

include the words "anger" or "rage." Smith's tactical decision is not so unreasonable that it will now

be second-guessed by this court. Further, Petitioner has not shown that no reasonable lawyer would

have used the same trial strategy of not objecting to the prosecutor's closing argument. Thus,

Petitioner has not demonstrated that his counsel's performance was deficient.

Even assuming that defense counsel should have objected when the prosecutor read from the

dictionary, Petitioner cannot show prejudice. The prosecutor did not give unusual or unintelligible

definitions, nor do the definitions differ from the ordinary meaning of the words. Further, as Smith

testified at the evidentiary hearing, the words are not "exotic legal terms" but are "every day words

that people use in ordinary discourse" (*id.*, Ex. A-VI at 905), and the prosecutor supplied the definitions in the context of telling the jurors to use their common sense in deciding what the words mean.  There is no indication that the supplied definitions confused the jurors or changed how the jurors thought about the words ill will, hatred, spite, or evil intent, so Petitioner cannot show any reasonable possibility that the result of the proceeding would have been different if defense counsel had successfully objected to the prosecutor's use of dictionary definitions in her closing statement.

Therefore, Petitioner's ineffective assistance of counsel claim is without merit, and the state court did not contrarily or unreasonably apply clearly established Supreme Court law when it denied Petitioner's claim.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that James R. McDonough is substituted for James V. Crosby, Jr. as Respondent.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola this 1ˢᵗ day of December 2006.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**